## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FERNANDO MAISONET,** | : | **CIVIL NO. 4:10-CV-1423** |
| | : | |
| **Petitioner,** | : | **(Judge McClure)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JEROME WALSH, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

#### A.    Introduction

In this case we are called upon to examine, once again, questions concerning the timeliness and adequacy of a state prisoner habeas corpus petition involving a decades-old state criminal prosecution. We undertake this review against the background of state litigation which commenced fifteen years ago, in January 1995, when Fernando Maisonet was sentenced to life imprisonment following his guilty plea conviction on murder, robbery and conspiracy charges. (Doc. 1, ¶¶ 2-5.) Six and one-half years ago, in December 2003, Maisonet's tardy direct appeal of this conviction and sentence concluded when the Pennsylvania Superior Court affirmed his sentence.

Four years and four months then passed without any action on Maisonet's part, until March 2008 when Maisonet filed a belated motion for post-conviction relief under  the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541

et seq. That state PCRA petition was dismissed as untimely, and the dismissal of this petition was affirmed by the Pennsylvania Superior Court on December 24, 2009.

Now–seventeen years after this slaying, fifteen years after his guilty plea conviction for this murder, six-and-one-half years after the conclusion of his direct appeal, and following the denial of Maisonet's tardy state PCRA petition on statute of limitations grounds–Maisonet comes to federal court seeking a writ of habeas corpus overturning this state conviction.

We had previously recommended dismissal of this matter. However, following our initial report and recommendation Maisonet filed a submission with the district court which belatedly raised new concerns regarding our report and recommendation. Out of an abundance of caution, the district court remanded this matter to this Court for further consideration of our report and recommendation in light of Maisonet's latest submission. (Doc. 15). Having conducted this review, for the reasons set forth below, it is recommended that this petition for writ of habeas corpus be denied.

## B.    <u>Procedural History of the State Prosecution</u>

This is a case with a lengthy, and tortured, litigation history marked by recurrent delay and dilatory conduct attributable to the Petitioner. The story of Fernando Maisonet's crime begins on October 25, 1993, with the filing of a criminal complaint against Maisonet in the Court of Common Pleas of Dauphin County. (Doc. 10-2, Ex. B.) Following pretrial proceedings, on January 13, 1995, on the eve of trial,

Maisonet pleaded guilty to murder, robbery and conspiracy charges (Doc. 1, ¶¶ 2-5.) Maisonet was sentenced to life imprisonment on this guilty plea. (Id.)

Maisonet did not pursue a timely direct appeal of this conviction and sentence in 1995. Instead, it appears that sometime in 2001, six years after his conviction, Maisonet sought to have his appellate rights reinstated *nunc pro tunc.* (Doc. 10-2, Ex. A and B.) This request was granted by the Pennsylvania courts. (Id.) With his appellate rights reinstated, Maisonet belatedly pursued a direct appeal of the guilty plea conviction and sentence, which concluded on December 2, 2003, when the Superior Court affirmed his conviction and sentence. (Doc. 10-2, Ex A.)

Maisonet then took no further action in this case for more than four years, until March 2008, when he filed a belated PCRA petition with the Court of Common Pleas. (Id., Ex. A.) Before the state courts Maisonet attempted to justify this four-and-one-half year delay by blaming the failure to timely litigate this matter on his former counsel, an attorney who had died in August, 2005. (Id., Ex. A.) Rejecting this argument, the state trial court denied this petition as time-barred under the state statute of limitations for such petitions. Maisonet then appealed this ruling to the Pennsylvania Superior Court, which entered an opinion and order affirming the denial of this PCRA petition on statute of limitations grounds on December 24, 2009. (Id., Ex. A.)

In affirming the dismissal of Maisonet's belated PCRA petition, the Superior Court considered, and rejected, Maisonet's assertion that the four year delay in litigating this matter should be excused due to the August 2005 death of his PCRA counsel. (Id.) Noting that Maisonet had an obligation to exercise due diligence in asserting his rights, the Superior Court held that Maisonet's failure to inquire into this status of his case for more than three years did not demonstrate the type of due diligence necessary to excuse a tardy post-conviction petition. (Id.) Maisonet appealed this decision to the Pennsylvania Supreme Court, which denied his petition for allowance of appeal on June 8, 2010. (Id., Ex B, p. 10.) Maisonet then filed this federal habeas petition on July 9, 2010. (Doc. 1.)

### C.     Maisonet's Federal Habeas Petition

On July 9, 2010, Maisonet filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Commonwealth filed an initial response to this petition asserting that this petition is barred by the one-year statute of limitations which applies to state habeas actions under 28 U.S.C. § 2244.(Doc. 10.) Maisonet, in turn, filed objections to the state's assertion of the statute of limitations in this case. (Doc. 11.)  With the issue of the timeliness of Maisonet's petition, squarely addressed by the parties,  (Docs. 1, 10 and 11) this Court issued an initial report and recommendation which recommended that Maisonet's petition be dismissed as barred by the statute of limitations. (Doc. 12).

Two weeks later, Maisonet filed objections to this report and recommendation, objections which argued that he had not had a full opportunity to brief these issues. In addition, Maisonet submitted a brief, and affidavits, which fully articulated his views regarding the timeliness and merits of his petition. (Docs. 13 and 14). Having received these submissions from Maisonet, the district court remanded this matter to this Court for further consideration in light of Maisonet's additional filings.

## II.  Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State;
>> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b)

## (1.)   Substantive Standards for Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

## (2.) **Procedural Benchmarks for Habeas Petitions**

### ( a. ) **Statute of Limitations**

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that petitioners timely file motions seeking habeas corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 224(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy

state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id. at 618-19.Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, Courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations. See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001);United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by the courts. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3d Cir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002)(same).

### (3)    <u>Deference Owed to State Court Rulings</u>.

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," <u>see</u> 28 U.S.C. §2254(d)(2).  Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts.  <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338-39 (2006); <u>see also</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 139-40 (3d Cir. 2006);  <u>Gattis v. Snyder</u>, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. <u>See</u> 28 U.S.C.

§2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. <u>See, e.g.</u>, <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (per curiam); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 734-35 (1990). This principle mandating deference to state court factual determinations specifically applies to state court findings relating a defendant's ability to comply with post-conviction petition filing deadlines. <u>Nara v. Frank</u>, 488 F.3d. 187, 200-01 (3d Cir. 2007)(state court finding that defendant's mental incompetence interfered with his ability to file timely petition entitled to a presumption of correctness). Rather, these factual findings must be presumed to be correct unless the petitioner can show by clear and convincing evidence that these factual findings were erroneous. <u>See</u> 28 U.S.C. §2254(e)(1).

B.   **Maisonet's Petition is Time-Barred by AEDPA's Statute of Limitations**

In this case, the Commonwealth argues as a threshold matter that Maisonet's petition is now barred by § 2244(d)'s one-year statute of limitations. Following the issuance of our initial report and recommendation in this matter, Maisonet advanced additional arguments regarding the timeliness and adequacy of his petition. (Docs. 13 and 14). We have now reviewed these assertions and find that our analysis of the delays which have plagued this litigation over the past fifteen years continues to convince us that these claims are, in fact, now time-barred.

The history of this case reveals that Maisonet was charged in October 1993, and convicted in January 1995. Maisonet then failed to pursue a direct appeal of this conviction and sentence for six years, until 2001, when his appellate rights were restored *nunc pro tunc*. Maisonet's conviction was then affirmed on direct appeal by the Pennsylvania Superior Court in December 2003.

Presented with this denial of his direct appeal, Maisonet took no action for more than four years, until March 2008, when he filed a belated PCRA petition in state court. In the state courts, and now in this federal proceeding, Maisonet seeks to excuse this four-year failure to assert his rights by attributing the failure to his own deceased PCRA counsel, who passed away in August 2005. This excuse was expressly considered, and rejected by the Pennsylvania courts, which found that Maisonet had taken no action to follow up on this matter for more than three years. Given Maisonet's failure to pursue this litigation in a more diligent fashion for more than three years, the Pennsylvania courts found his PCRA petition to be time-barred, and denied this state collateral attack.

We have now re-examined Maisonet's petition in light of his recent submissions to the district court. Having conducted this review, we continue to find that Maisonet's federal habeas petition is untimely, and is now barred by AEDPA's one-year statute of limitations. Indeed, even the most straightforward, and generous, application of §

2244's statute of limitations to this case leads to a finding that this petition is time-barred. If we entirely excluded the eight-year period between Maisonet's January 1995 conviction and the denial of his tardy direct appeal in December 2003 from statute of limitations calculations, and further tolled an additional 90 days for a potential petition for writ of certiorari, a writ that Maisonet never sought, the limitations period for this federal habeas petition would begin to run on or about March 2004. From this benchmark date, an additional six years and four months passed before Maisonet filed his federal habeas petition in July 2010, a period which is far in excess of the one-year limitations period prescribed by § 2244.

Maisonet cannot save this untimely federal habeas petition by citing to the fact that he filed a PCRA petition in March of 2008. That petition, which was filed more than four years after the denial of Maisonet's direct appeal, was found by the Pennsylvania courts to be clearly untimely under state law. As an untimely petition that tardy pleading cannot be considered a "properly filed application for State post-conviction or other collateral review" which may toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

But even if we found grounds upon which to toll the entire time period from March 2008 through June 2010, when this PCRA petition was pending in the state

courts, Maisonet's federal petition would still be untimely since four years which are not tolled in any fashion would have elapsed between the time when his direct appeal concluded, in March 2004, and the filing of this tardy PCRA petition, in March 2008.

Finally, Maisonet attempts to justify this delay on the same grounds which he unsuccessfully advanced in the state litigation, the August 2005 death of his state PCRA counsel. (Doc. 11) Like the state courts, we find this excuse to be inadequate to carry Maisonet's burden of showing that: "the petitioner has '**in some extraordinary way** ... been prevented from asserting his or her rights.'" Miller, 145 F.3d at 618-19 (citations omitted)(emphasis added). The claim that his counsel died in August 2005 plainly does not provide the type of extraordinary circumstances justifying equitable tolling. Indeed, this argument fails for at least two reasons.

First, we note that Maisonet's PCRA counsel died in August 2005, some 16 months *after* Maisonet exhausted his direct state appeals of this conviction. Thus, the one-year time period for filing either a state PCRA petition or a federal habeas petition had already lapsed months prior to the death of Maisonet's state counsel. In these circumstances, where counsel's death falls after a missed filing deadline, it has been held that the death of counsel simply does not provide grounds for equitable tolling of the statute of limitations. See Zuniga v. Pennsylvania Department of Probation and Parole, No. 05-5517, 2008 WL 2510155 (E.D. Pa. June 19, 2008).

More fundamentally, like the state courts, we find that Maisonet has failed to satisfy a basic prerequisite for equitable tolling. He has failed to show that he "'exercised reasonable diligence in investigating and bringing [the] claims.' " Miller, 145 F.3d at 618-19 (citations omitted). Rather than showing reasonable diligence, we find that Maisonet's approach to this litigation is marked by total indolence. It is entirely undisputed that Maisonet allowed years to lapse without making the slightest inquiry into the status of his state case, and permitted more than four years to pass by before acting to challenge his conviction and sentence in PCRA proceedings. In the face of this undeniable record of complete inaction, no form of statutory tolling analysis can save this petition from the fate which AEDPA's one-year statute of limitations dictates for any habeas petition brought fifteen years after the Petitioner's conviction. On its face, this petition is untimely and falls outside § 2244(d)'s one-year limitation period.

Nor can we find any extraordinary circumstances of the type which would justify equitable tolling of this limitations period. In this regard, it is incumbent upon Maisonet to demonstrate that: "the petitioner has '**in some extraordinary way** ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere

excusable neglect is not sufficient." Miller, 145 F.3d at 618-19 (citations omitted)(emphasis added).

The state courts have already found that Maisonet's proffered excuse for his failure to timely advance these claims, the death of his PCRA counsel, cannot meet this burden of proving extraordinary circumstances justifying tolling of this limitations period since it is undisputed that Maisonet neglected to assert his rights in any fashion for at least three years during this period. Since Maisonet has failed to show by clear and convincing evidence that these factual findings by the state courts regarding his failure to timely assert his rights were erroneous, these findings are binding upon this Court, see 28 U.S.C. §2254(e)(1), and compel dismissal of this petition as untimely.

In his most recent pleadings, Maisonet also suggests that his lack of mental competence may excuse this untimely filing.(Doc. 14.) There are several difficulties with this assertion. First, it appears from Maisonet's 2008 state court pleadings, that this issue was raised by Maisonet in his 2008 PCRA petition, but was not found to be persuasive by the state courts. (Id.)

More fundamentally, this argument fails as a legal matter. On occasion, petitioners like Maisonet may cite to claims of mental incompetence as grounds for equitable tolling of this statute of limitations. While a finding of incompetence may provide grounds for equitable tolling of this limitations period, see e.g., Nara v.

Frank, 488 F.3d 187 (3d Cir. 2007); Holt v. Bowersox, 191 F.3d 970 (8th Cir. 1999), such claims are subject to careful scrutiny by the courts. Thus, at the outset it is clear that a claim of some mental impairment, standing alone, will not excuse a procedural default by a federal habeas petitioner. Quite the contrary:

> In the "context of procedural bars arising from failure to pursue state postconviction remedies, '[a] defendant is competent ... if he is not suffering from a mental disease, disorder, or defect that may substantially affect his capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation.' " *Mental illness and legal incompetence are not identical, nor are all mentally ill people legally incompetent.*" *Id.* (emphasis added).

Sims v. Dwyer, No. 05-727, 2006 WL 2385262, at *8 (E.D.Mo. Aug.17, 2006)(citations omitted)

"Likewise, mental disabilities or disorders that do not substantially affect a petitioner's capacity to appreciate his or her position and make rational choices with respect to continuing or abandoning further litigation are not sufficient 'cause.' [justifying untimely habeas filings] See Sims v. Dwyer, 2006 WL 2385262 (E.D.Mo.); see also Bermudez v. Lewis, 58 Fed. Appx. 268 (9th Cir.2003); Stanley v. Lockhart, 941 F.2d 707 (8th Cir.1991)." Teall v. Vail, No. 09-565, 2010 WL 2079855, *1 (W.D.Wash. May 21, 2010). Instead:

> [I]n order for mental illness to constitute cause and prejudice to excuse procedural default, *there must be a conclusive showing* that mental illness interfered with a petitioner's ability to appreciate his or her

position and make rational decisions regarding his or her case at the time
during which he or she should have pursued post-conviction relief. <u>See</u>
<u>Garrett v. Groose</u>, 99 F.3d 283, 285 (8th Cir.1996); <u>Nachtigall v. Class</u>,
48 F.3d 1076, 1080-81 (8th Cir.1995); <u>Stanley v. Lockhart</u>, 941 F.2d at
708-10.

<u>Holt v. Bowersox</u> 191 F.3d 970, 974 (8th Cir. 1999)(emphasis added).

Applying these legal benchmarks, federal courts have frequently declined invitations in cases such as this to excuse tardy petitions or other procedural defaults by federal habeas corpus petitioners on the grounds of mental incompetence where the petitioner has not made a conclusive showing that mental illness interfered with his ability to appreciate his position and make rational decisions regarding his case at the time during which he should have pursued post-conviction relief. <u>See e.g.</u>, <u>Teall v. Vail</u>, No. 09-565, 2010 WL 2079855, *1 (W.D.Wash. May 21, 2010); <u>Sims v. Dwyer</u>, No. 05-727, 2006 WL 2385262, 8 (E.D.Mo. Aug.17, 2006); <u>Jasa v. Mathes</u>, No. 03-4095, 2004 WL 2039854 (N.D. Iowa, Sept. 13, 2004); <u>Ryan v. Clarke</u>, 281 F.Supp.2d. 1008 (D. Neb. 2003). Therefore, since Maisonet has not made a persuasive–much less a conclusive– showing that mental illness interfered with his ability to appreciate his position and make rational decisions regarding his case at the time during which he should have pursued post-conviction relief, he cannot obtain equitable tolling on this ground.

Furthermore, in this case several factors weigh heavily against equitable tolling of the limitations period for Maisonet. At the outset, equitable tolling would be particularly inappropriate here, given the nature of the claims that Maisonet seeks to advance in a tardy fashion. Liberally construed, Maisonet's petition advances claims that his counsel was incompetent, and his guilty plea was involuntary, matters which would have been apparent to the Petitioner many years ago. Therefore, it simply cannot be said "that [t]he [petitioner] . . . 'exercised reasonable diligence in investigating and bringing [the] claims'" when he delayed a decade or more before asserting these claims. Miller, 145 F.3d at 618-19 (citations omitted).

Yet, while Maisonet has made no showing of extraordinary circumstances on his part which would justify tolling this limitations period, there are substantial interests that weigh in favor of holding Maisonet strictly to the limitations period prescribed by law. These countervailing interests include the strong societal interests favoring finality in litigation, as well as the institutional interests of the criminal justice system, which favor prompt presentation and resolution of disputes. However, when considering a statute of limitations question in the context of a belated collateral attack upon a criminal conviction arising out of a homicide, there is also an important human dimension to the statute of limitations. In 1993, Maisonet was charged with murder, robbery and conspiracy. In 1995 he pleaded guilty to those crimes. To ignore

the limitations period prescribed by law, and permit Maisonet to belatedly re-open

this case fifteen years later, would compel the victims to, once again, experience the

trauma of these events. Since Maisonet has not fulfilled his responsibility to bring this

petition in a timely manner, and has not carried his burden of showing extraordinary

circumstances justifying a tolling of the statute of limitations, he should not be entitled

to compel the government to require his victims to revisit these events.

**C.** **To the Extent That Maisonet Now Seeks To Litigate His Mental Competence to Plead Guilty 15 years After His Guilty Plea, An Issue He Concedes Has Never Been Fully Litigated in the State Courts, His Claims Are Unexhausted and Procedurally Barred**.

Maisonet's efforts fifteen years after his guilty plea conviction to raise this

mental competence claim, a claim which he concedes has never been fully litigated in

state court, presents yet another reason for dismissal of this petition. State prisoners

like Maisonet who seek relief under Section 2254 must also satisfy specific, and

precise, procedural standards. Among these procedural prerequisites is a requirement

that the petitioner " has exhausted the remedies available in the courts of the State"

before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state

prisoner has failed to exhaust the legal remedies available to him in the state courts,

federal courts typically will refuse to entertain a petition for habeas corpus. See

Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

A necessary corollary of this exhaustion requirement is the procedural default doctrine which applies in habeas corpus cases. Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim. In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted. . . .

If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play. A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d. Cir. 2002)(citations omitted).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds.'" Hubbard v. Pinchak ,378 F.3d 333, 338 (3d. Cir. 2004)(citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-193 (3d. Cir. 2000)(citations omitted). Similarly, when

examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove " 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Similarly, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored, and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. Hubbard v. Pinchak, 378 F.3d 333, 338 (3d. Cir. 2004).

Procedural bar claims typically arise in one of two factual contexts. First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground. In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule

must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, Doctor v. Walters, 96 F.3d 675, 684 (3d Cir.1996), because a petitioner is entitled to notice of how to present a claim in state court, Ford, 498 U.S. at 423-424, 111 S.Ct. 850.

Taylor v. Horn, 504 F.3d 416, 427-428 (3d. Cir.2007).

In other instances, the procedural bar arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. See, e.g., Johnson v. Pinchak, 392 F.3d 551(3d. Cir. 2004)(procedural default when petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d. Cir. 1993)(same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice". Id.

In this case, Maisonet's latest filings concede that the issues he is now attempting to pursue have never been addressed on their merits in state court. (Doc.

14, p. 14, "The state courts have never adjudicated petitioner's competency claims on the merits . . . .") Yet Maisonet does not demonstrate the type of circumstances which would justify excusing these procedural defaults, and considering the merits of these otherwise unexhausted claims.

At the outset, Maisonet errs when he suggests that this competence issue has been fairly presented to the state courts. Maisonet pleaded guilty in January 1995 without raising this claim. He then followed an erratic, uneven course of intermittent litigation over the past 15 years. Thus, Maisonet did not pursue a timely appeal of his conviction. Instead, 18 months after he was convicted he filed a petition for writ of *coram nobis*. This *pro se* petition led to litigation which resulted in his first, unsuccessful state appeal, an appeal which concluded in 2003. Maisonet then allowed four-and-one-half years to elapse before bringing a state PCRA petition, which raised this competency claim. That petition, however, was rejected by the state courts as untimely, since it was first filed almost 13 years after Maisonet's conviction. Where, as here, a petitioner fails to advance a claim of actual innocence in a diligent fashion, courts have concluded that equitable tolling based upon a claim of actual innocence is legally inappropriate. See Horning v. Lavan, 197 F.App'x 90 (3d Cir. 2006).

Moreover, given Maisonet's history of delay in this litigation he cannot show as a factual matter either "cause and prejudice" or demonstrate a "fundamental

miscarriage of justice", justifying his procedural defaults. In such instances, a petitioner typically must show "actual innocence" to excuse his procedural defaults. In this case, Maisonet's efforts in this regard are wholly unavailing, and consist of little more than a general, factually unsupported claim of innocence.

In order to rely upon a claim of actual innocence to excuse a procedural default Maisonet must make an exacting showing. It is well-settled that:

> A petitioner who is asserting his "actual innocence of the underlying crime ... must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition." Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (quoting Schlup, 513 U.S. at 327, 115 S.Ct. 851). In Schlup, the Supreme Court stated that claims of actual innocence are rarely successful because the necessary evidence is unavailable in the vast majority of cases. 513 U.S. at 324, 115 S.Ct. 851. The Court explained that a petitioner must support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Id. We must therefore consider both whether [the petitioner] has presented "new reliable evidence ... not presented at trial," and, if so, whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.

Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

Thus, in the context of an otherwise procedurally barred collateral attack upon a guilty plea conviction:

> [T]he procedural default bar requires the defendant to establish that "the constitutional error in his plea colloquy 'has probably resulted in the

conviction of one who is *actually innocent.*' " This requires a defendant to establish that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Thus, in habeas jurisprudence, " 'actual innocence' means factual innocence, not mere legal insufficiency."Accordingly, "the Government is not limited to the existing record to rebut any showing that petitioner might make." Simply stated, " 'actual' innocence ... means that the person did not commit the crime."

United States v. Garth, 188 F.3d 99, 107 (3d Cir. 1999)(citations omitted).

Judged against this precise standard, the general assertions of innocence which Maisonet now makes fifteen years after his guilty plea conviction simply do not demonstrate his actual innocence in a fashion which permits the court to excuse his decade-old procedural defaults. Quite the contrary, many aspects of Maisonet's belated factual assertions of innocence seem to inculpate him. For example, in the affidavit attached as Exhibit B to his traverse, (Doc. 14, Ex B.) Maisonet states that he was present when two other men discussed the armed robbery of a convenience store, and participated in that discussion. Maisonet also acknowledges that he was near the scene of the robbery when that crime occurred, and then met with the other robbers shortly after the crime, but insists that this extraordinary series of events was merely coincidental. These factual assertions are at best highly equivocal, and in many respects are actually deeply inculpatory. Given that Maisonet must both show that "the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is *actually innocent.*' " [and prove] that "in light of all the evidence, it is more

likely than not that no reasonable juror would have convicted him," <u>U.S. v. Garth,</u> 188 F.3d 99, 107 (3d Cir. 1999)(citations omitted), it cannot be said that these equivocal and inculpatory admissions have met this burden of overcoming the petitioner's procedural defaults.

Thus, a review of the newly filed submissions tendered by Maisonet actually highlights further procedural flaws in this petition. These submissions (Docs. 13 and 14) confirm that Maisonet's petition is time-barred; but further demonstrate that his current claims were never addressed by the state courts and are, therefore, unexhausted; and underscore that those claims are now procedurally barred. Indeed, given this failure to exhaust his state remedies, the best that can be said of Maisonet's federal pleading is that it is the very model of an unexhausted petition which the court ordinarily should dismiss, so that he can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).

### III. <u>Recommendation</u>

We have now conducted an additional review of Maisonet's petition, fully considering the arguments which he has made following the submission of our first report and recommendation. (Docs. 13 and 14). Having conducted this review, and considered these new matters, we find that Maisonet's petition is fatally flawed in

three separate respects. First, the petition is time-barred by the statute of limitations. Second, the claims made in the petition have not been fully exhausted in the states courts. Third, litigation of these previously unexhausted claims is now procedurally barred due to Maisonet's dilatory approach to this case. Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of September, 2010.

**_S/Martin C. Carlson_**

Martin C. Carlson

United States Magistrate Judge